**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**WEIQIANG ZHANG,** )<br>**Defendant.** )<br>_____) | **Case No. 13-20134-01-CM** |

## MEMORANDUM AND ORDER

In February of this year, a jury convicted defendant Weiqiang Zhang of three crimes: Count One, conspiracy to commit theft of trade secrets; Count Three, conspiracy to transport stolen property in interstate commerce; and Count Four, aiding and abetting the interstate transportation of stolen property. Following conviction, defendant filed a Motion for Judgment of Acquittal (Doc. 235). In this motion, defendant asks for judgment of acquittal on all three counts. He argues that (1) there was insufficient evidence that defendant or his alleged co-conspirators intended to steal trade secrets; (2) Ventria's transgenic rice does not constituted "goods, wares, [or] merchandise" as required by statute; and (3) the allegedly stolen rice does not have a market value of at least $5,000. For the following reasons, the court denies defendant's motion.

In reviewing a motion for judgment of acquittal, the court views the evidence in the light most favorable to the government. *United States v. Hughes*, 191 F.3d 1317, 1321 (10th Cir. 1999). The court must grant a motion for judgment of acquittal when the evidence is insufficient to sustain a conviction. Fed. R. Crim. P. 29(a). On the other hand, the court must uphold the jury's guilty verdict if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Haber*, 251 F.3d 881, 887 (10th Cir. 2001) (citation and quotation marks

-1-

omitted) (emphasis in original). "The evidence necessary to support a verdict need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt." *United States v. Wood*, 207 F.3d 1222, 1228 (10th Cir. 2000) (citation and quotation marks omitted). The court considers both direct and circumstantial evidence, as well as reasonable inferences that can be drawn from that evidence. *United States v. Davis*, 1 F.3d 1014, 1017 (10th Cir. 1993). An inference is "reasonable" only if "logical and probabilistic reasoning" can lead to the conclusion. *United States v. Jones*, 44 F.3d 860, 865 (10th Cir. 1995) (citation omitted). The court does not examine the evidence in "bits and pieces," but rather evaluates the sufficiency by "consider[ing] the collective inferences to be drawn from the evidence as a whole." *United States v. Hooks*, 780 F.2d 1526, 1532 (10th Cir. 1986) (citation omitted).

## Intention to Steal Trade Secrets

Defendant asks the court to acquit him of conspiracy to steal trade secrets. In support, he offers three reasons why the government did not prove its case for Count One. First, defendant argues that the government did not present evidence sufficient to infer that defendant or his alleged co-conspirators believed the transgenic seeds constituted "trade secrets." Second, defendant argues that there is insufficient evidence that his alleged co-conspirators acted for the economic benefit of anyone other than Ventria. Third, defendant argues that the government failed to present sufficient evidence to show that defendant or his alleged co-conspirators acted with intent to harm Ventria.

*Belief that the Seeds were Trade Secrets*

To convict on Count 1, the jury must have found that the conspirators shared an intent to convert a trade secret. 18 U.S.C. § 1832(a). Defendant argues that in this case, a finding that defendant and his alleged co-conspirators possessed the requisite intent requires impermissible inference stacking. *See United States v. Powell*, 982 F.2d 1422, 1430 (10th Cir. 1992).

The court disagrees.  The jury heard evidence about the measures Ventria took to maintain the secrecy of its work, including using non-disclosure agreements and assignment agreements with its employees.  As a rice breeder at Ventria, defendant signed these agreements.  Although much of Ventria's methodology and technology was patented, much of it was not disclosed in patents.  The jury also heard evidence about the time and money that Ventria spent developing and protecting its work.  And the jury heard evidence about defendant's connections with the Tianjin Crop Research Institute in China ("TCRI").  The government showed that defendant hid the nature of his personal time off while the TCRI delegates were in his home.  And without Ventria's authorization, defendant acquired rice seeds containing the recombinant proteins Ventria developed, storing them at his home.  This further supports that defendant intentionally hid the nature of his activities—supporting the inference that defendant knew he was stealing items that Ventria sought to protect.

The government was not required to prove that the stolen seeds actually contained trade secrets. *See United States v. Hsu*, 155 F.3d 189, 203–04 (3d Cir. 1998) ("[P]roof that the defendants sought to steal actual trade secrets is not an element of the crime[] of . . . conspiracy under the EEA [(Economic Espionage Act)].  A defendant can be convicted of . . . conspiracy pursuant to [the EEA] even if his intended acts were legally impossible.")  It was only required to prove that defendant and his co-conspirators believed that they would be stealing a trade secret.  *See United States v. Nosal*, 844 F.3d 1024, 1044 (9th Cir. 2016) ("[T]he government need not prove the existence of actual trade secrets and that Defendant knew that the information in question was a trade secret"; instead, it "must prove that Defendant firmly believed that certain information constituted trade secrets.").  The government presented evidence sufficient to create reasonable inferences that defendant and his co-conspirators did, in fact, believe that they would be stealing a trade secret.

*Acting for Economic Benefit*

For Count 1, the government must show that the conversion of a trade secret was done "to the economic benefit of anyone other than the owner thereof." 18 U.S.C. § 1832(a). Defendant argues that the government presented no evidence that defendant or his alleged co-conspirators acted with motivation to create economic benefit for China.

Again, the court disagrees. The jury heard evidence that defendant worked for TCRI from 1992 to 2000. He indicated in 2010 that he remained loyal to TCRI. Also, the jury heard that TCRI and Ventria's fields are at approximately the same latitude, which would save TCRI the cost of modifying the rice to grow in another climate. The evidence was sufficient for the jury to find that defendant and his co-conspirators acted for the economic benefit of TCRI (and, logically, that defendant intended to benefit himself, as he stated his desire to return to TCRI).

*Intent to Harm Ventria*

A final requirement of the trade secret statute is that the act be done "intending or knowing that the offense will[] injure any owner of that trade secret." 18 U.S.C. § 1832(a). Defendant argues that the government failed to establish that defendant believed he was injuring Ventria or intended to do so. Defendant continued to work for Ventria after the events at issue in this case. To injure Ventria would have meant to injure defendant's own employer. Defendant also claims that the government failed to show the same knowledge or intent on the part of defendant's alleged co-conspirators.

The same evidence that supported a finding that defendant and his co-conspirators were acting for the benefit of TCRI also supports a finding that they were acting with the intent to injure Ventria or the knowledge that their actions would injure Ventria. The evidence showed that Ventria took strong measures to protect its processes and products. Employees were aware of these measures. There is a logical inference that if defendant and his co-conspirators were working to benefit one of Ventria's

-4-

competitors, such actions would also work to the detriment of Ventria—who had spent significant time and resources in developing the rice seeds. The evidence on this element supports the jury's verdict.

### "Goods, Wares, [or] Merchandise"

For Counts 3 and 4, the court instructed the jury that they must find that defendant conspired to transport or aided and abetted transportation of stolen "goods, wares, [or] merchandise." 18 U.S.C. § 2314. Defendant argues that the ordinary meaning of these words does not encompass transgenic rice seeds. Relying heavily on the Third Circuit case *United States v. Seagraves*, 265 F.2d 876 (3d Cir. 1959), defendant claims that to satisfy the typical dictionary definition, the property ordinarily is the subject of commerce.

Although Ventria does not presently distribute its rice seeds, Ventria's CEO Scott Deeter testified that other companies with analogous seed lines did sell or license their seed. And Ventria might, in the future, decide to do the same.

In any event, the ordinary meaning of "goods" does not require an element of commerce. To require such an element would narrow the term such that it would render it surplusage in the phrase "goods, wares, or merchandise." The Tenth Circuit has not held that property must be held out for sale in order to qualify as "goods." *Cf. United States v. Brown*, 925 F.2d 1301, 1308 (10th Cir 1991) (holding that source code was not "goods, wares, or merchandise" because it was intangible intellectual property—not because it had never been sold); *United States v. Lyons*, 992 F.2d 1029, 1033 (10th Cir. 1993) (holding that the theft of software that was contained on hardware was a theft of "goods, wares, or merchandise" without considering whether the software or hardware had ever been offered for sale). The *Seagrave* case from the Third Circuit does not require a different outcome. The focus in *Seagrave* was on whether the stolen maps were of the type that *could* be sold—not whether

-5-

they were *actually* sold.  265 F.2d at 880.  Evidence presented at trial in this case was adequate to meet the *Seagrave* standard, as well.

## **Market Value of Rice**

For a valid conviction on Counts 3 and 4, plaintiff must have shown that the value of the transgenic rice seeds met or exceeded $5,000.  This is a jurisdictional requirement and an element of both offenses.  *United States v. Cummings*, 798 F.2d 413, 415–16 (10th Cir. 1986).  "Value" means market value.  *Id.* at 416.  The test for determining the market value is the "price which a willing buyer would pay a willing seller . . . at the time and place that the property was [alleged to have been] stolen."  *Id.*  The court instructed the jury on this requirement and definition.  Implicit in the definition is the requirement that a market exist.

Defendant claims that the government did not meet its burden of proof because there is no existing market for the kind of transgenic rice seeds at issue here.  As noted previously, Ventria did not sell or license the rice seeds at issue.  But the jury heard evidence that if Ventria were to sell or license the rice seeds, the price would be substantially more than $5,000.  Actual sales were not required.  *See United States v. Lester*, 282 F.2d 750, 755 (3d Cir. 1960) ("Of course in most instances market value is used because under ordinary circumstances it is easily ascertainable.  But where an exceptional type of goods that has no market value is the subject of the indictment, any reasonable method may be employed to ascribe an equivalent monetary value to the items.")  The jury's verdict is sustainable, and the court denies defendant's motion on this basis.

**IT IS THEREFORE ORDERED** that defendant Zhang's Motion for Judgment of Acquittal (Doc. 235) is denied.

Dated this 26th day of July, 2017, at Kansas City, Kansas.

s/ Carlos Murguia<br>
**CARLOS MURGUIA**<br>
**United States District Judge**
