IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 13-20134-01-CM |
| ) | |
| **WEIQIANG ZHANG**, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM ON SENTENCING

The United States, through its undersigned counsel, submits this memorandum recommending a sentence of 151 months of imprisonment for defendant Weiqiang Zhang. This recommendation is on the low end of the Guidelines Range as calculated by the Presentence Investigation Report (PSR), and is sufficient but not greater than necessary to reflect the seriousness of the offense, provide just punishment, and afford adequate general deterrence.

## PROCEDURAL HISTORY

Defendant Zhang was arrested on December 12, 2013, pursuant to a criminal complaint charging him with conspiracy to steal trade secrets in violation of 18 U.S.C. § 1832(a)(5). (Presentence Report (PSR), doc. 245 ¶¶1-2.) On December 18, 2013, a grand jury returned an indictment charging Zhang with conspiracy to steal trade secrets and theft of trade secrets. (*Id.* ¶3.) A superseding indictment was returned on September 8, 2016, adding charges of interstate transportation of stolen property and conspiracy to commit same. (*Id.* ¶5.) On January 30, 2017, the court dismissed the theft of trade secrets count pursuant to the government's motion. (*Id.* ¶6.) On February 16, 2017, following trial, a jury convicted Zhang of conspiracy to steal trade

secrets, interstate transportation of stolen property, and conspiracy to commit interstate transportation of stolen property. (*Id.* ¶7.)

## FACTUAL SUMMARY

Defendant Zhang was born in China and received his undergraduate and graduate degrees in China. (*Id.* ¶10.) He then worked for the Tianjin Crop Research Institute (TCRI) for eight years as a rice breeder. (*Id.*) In 2000, he moved to the United States, obtaining a Ph.D. in rice genetics, breeding, and molecular biology in 2005 from Louisiana State University. (*Id.*) While in the United States, Zhang received multiple certificates from entities located in Tianjin. (*Id.*)

In 2008, Zhang began working for Ventria Bioscience as a rice breeder. (*Id.*) Ventria is a U.S. company that produces human proteins through rice that have uses in the medical and pharmaceutical fields, and it is one of the only companies in the world that produces such proteins through rice. (*Id.* ¶¶12-13.) Two of the most important proteins to Ventria's business at the time of the theft were lactoferrin (LF) and human serum albumin (HSA). (*Id.* ¶14.) Ventria had invested approximately $55 million in the seed technology that enabled development of LF and HSA seeds, and the company estimated that the loss of the LF and HSA seeds themselves would cost the company between $3 million and $18 million. (PSR ¶63.) Zhang signed an employment agreement assigning his work results to Ventria, and he also signed a nondisclosure agreement. (*Id.* ¶18.) His responsibilities included breeding Ventria's proprietary genetically-engineered rice so that it would grow well in the Kansas climate and yield the desired proteins. (*Id.* ¶19.) Ventria made all of its employees aware of the need to keep company information confidential, including a strict prohibition on removing rice from company control (including an obvious bar on taking rice home). (*Id.* ¶20.) As a rice breeder, Zhang was a trusted insider at Ventria with all-hours access to its Junction City facility, and one of only six employees with

access to the seed vault where the proprietary master and developmental seeds were maintained and secured.  (*Id.* ¶21.)

While working for Ventria, Zhang maintained contact with TCRI.  In the summer of 2010, Zhang coordinated a visit by TCRI personnel to the United States, including TCRI director Xuejun Liu.  (*Id.* ¶24.)  Ventria management informed Zhang that Ventria would not permit the TCRI delegation to visit Ventria's facility.  (*Id.*)  Later in 2010, Zhang drafted a Chinese-language letter to TCRI expressing his desire to use the information he was learning at Ventria to help TCRI.  In the letter, Zhang noted that "[t]he company I work for is the only US biotech company that has produced and sold these recombinant protein products made from rice seeds."  He also wrote, "Even though I am abroad, the fatherland [China] has remained in my heart.  It is an aspiration of mine to one day return to [TCRI] and selflessly offer up everything I have learned."  (*Id.* ¶25; Govt. Trial Ex. 55.)  In the summer of 2012, Zhang visited TCRI along with USDA rice scientist Wengui Yan.  (PSR ¶27.)

In the summer of 2013, Zhang again coordinated a TCRI delegation visit to the United States; the delegation again included TCRI director Liu.  The approximate three-week, multi-state itinerary began in Kansas in July 2013, during which Zhang hosted Dr. Liu and his assistant at Zhang's Manhattan home.  (*Id.* ¶34; Govt. Trial Exs. 23 and 24.)  At the end of the trip, U.S. authorities searched the TCRI delegates' luggage as they prepared to board their flight back to China.  Authorities found Ventria's proprietary rice seed in the delegates' luggage, including seeds designed to produce the human proteins lactoferrin (LF) and human serum albumin (HSA).  (*Id.* ¶¶41, 43, 48, 49.)

In December 2013, authorities executed a search warrant at Zhang's Manhattan home. The search revealed Ventria's proprietary seeds, including Ventria's seeds designed to produce LF and HSA. (*Id.* ¶¶61-62.)

The PSR correctly calculated the guidelines applicable in this case, and the government withdraws its objection to the PSR's use of the 2016 Guidelines Manual, under the "One Book" Rule of U.S.S.G. § 1B1.11(b)(2). *See id.* ¶¶152-56 and 201.

In summary, the base offense level pursuant to U.S.S.G. § 2B1.1(a)(2) is 6, *id.* ¶76; the loss amount exceeds $25 million so the offense level increases by twenty-two levels pursuant to U.S.S.G. § 2B1.1(b)(1)(L), *id.* ¶78; the offense involved a trade secret that Zhang knew would be transported outside the United States and benefit a foreign government or instrumentality so the offense level increases another four levels pursuant to U.S.S.G. § 2B1.1(b)(13)(B), *id.* ¶ 79; and Zhang abused his position of trust so the offense level increases another two levels pursuant to U.S.S.G. § 3B1.3, *id.* ¶ 81. Thus, the total offense level is 34, *id.* ¶86, and being in criminal history category I, the guidelines range is 151-188 months, *id.* ¶¶91 and 120.

As the statutory maximum term of imprisonment for Counts 1 and 4 is ten years and the statutory maximum term of imprisonment for Count 3 is five years, the sentences may be ordered to be served consecutively to achieve the guidelines range. U.S.S.G. § 5G1.2(d). As explained below, the statutory sentencing factors of 18 U.S.C. § 3553(a) support a reasonable sentence within this guidelines range.

## ARGUMENT

### A. Zhang Intended to Cause Harm to Ventria in Excess of $25 Million.

Zhang's intended harm to Ventria is the principal factor driving the Guidelines calculation, and the PSR correctly estimated that harm as exceeding $25 million. Application

Note 3(C)(ii) to U.S.S.G. § 2B1.1 permits the court to make a reasonable estimate of loss using development costs or the reduction in value of the stolen information. Trial testimony established that Ventria had invested over $80 million developing its rice since 2001, and that two of its most important proteins at the time of the theft were LF and HSA. Ventria was working hard to perfect commercial products based on these proteins, and the company's future depended on it; Ventria expected billion-dollar markets for these products. Ventria witnesses emphasized the trial-and-error nature of its research and development, and Ventria bore the cost of the many failures that preceded each viable method or product. The government plans to present testimony at sentencing from Ventria CEO Scott Deeter that will include more details on Ventria's investment and the effect of the theft on the company.

At the time of the theft, Zhang had been a Ventria employee for five years, and from his training and experience, he knew the value of the LF and HSA seeds, as well as the proprietary methods of developing and growing them. And as a rice breeder and trusted insider on the Junction City team, he was one of the very few employees with access to the proprietary and developmental master seeds, and personal knowledge of the proprietary breeding, cultivation, and growing methods that Ventria developed to maximize the production of proteins from those seeds. Zhang's 2010 letter to TCRI showed that he knew how unique Ventria's work was, as he boasted that Ventria was the only U.S. company producing and selling those types of protein products. That letter revealed Zhang knew how exceedingly valuable the seeds and Ventria's proprietary and secret information would be to China and TCRI, particularly when considering Zhang's estimation that the use of land in China for industrial protein development would be "500 times more profitable" than using the land for commercial grain. In essence, Zhang demonstrated his loyalty to TCRI and the "fatherland" over Ventria.

Trial testimony left no doubt that all Ventria employees, including Zhang, knew that the release of Ventria's rice seeds or its breeding and growing methods would cause grave harm to Ventria.  Fortunately, authorities seized the seeds from the TCRI delegation and protected Ventria from the actual harm of losing the seeds.  Without question, Zhang knew that he was endangering Ventria's future by giving Ventria's seeds to the TCRI delegates.  Zhang's 2010 letter to TCRI eliminates all doubt concerning his loyalties.

Given these facts, an intended loss of over $25 million is reasonable, resulting in a 22-point increase in offense level.  A lower estimate of intended loss would result in a Guidelines calculation that underestimates the seriousness of the offense.  For example, the next rung down on the §2B1.1 loss table calls for a 20-point increase for intended losses of more than $9.5 million.  $9.5 million clearly underestimates the intended loss here, in light of the costs incurred by Ventria in developing the technology and the obvious importance of the technology to the company.  Indeed, the intended loss was well above $25 million, and the overall impact of stealing the technology developed and employed by Ventria exceeds $55 million.

The intended loss estimate is unchanged by the fact that Ventria patented some of the laboratory process for producing the seeds -- the methods for scaling up the process for commercial production, as well as subsequent technical refinements to the original process, comprise the information that Ventria considers to be trade secrets.  Likewise, the facts that Zhang passed only a limited number of seeds to TCRI and kept hundreds or thousands more seeds in his home are irrelevant.  Ventria witnesses testified at trial that Ventria developed the seeds to be genetically consistent, and that planting a single Ventria rice seed would grow a plant bearing thousands of nearly identical seeds.  Ventria employees, but especially a rice breeder like Zhang, knew that this was one of the reasons that Ventria guarded its rice so carefully.

The trial testimony and the facts contained in the PSR provide ample basis to conclude that Zhang, a trusted Ventria insider, intended to cause $25 million or more of harm to Ventria by providing Ventria's seeds and technology to TCRI.

### B. A Guidelines Sentence of 151 Months of Imprisonment Is Appropriate.

Given the severe harm that Zhang's theft, if successful, would have caused Ventria, and the need to deter future international thefts of intellectual property by similarly placed insiders, a sentence of at least 151 months of imprisonment (at the low end of the applicable guidelines range) is sufficient, but not greater than necessary, to comply with the 18 U.S.C. § 3553(a) factors. In the context of this crime, the most important § 3553(a) factors are the need to reflect seriousness of the offense, provide just punishment, and deter future crimes of this nature.

This was an extremely serious offense. Ventria CEO Scott Deeter testified at trial about what went through his head when he heard that the FBI had seized Ventria's seed from the TCRI delegation. The very moment of that call from the FBI is seared into Mr. Deeter's memory. Ventria was a small company, and Mr. Deeter rightly feared that the loss of its seed could have a catastrophic effect. Fortunately, authorities seized the seed before it left the country, but without their hard work Ventria would have suffered extreme consequences. Although Ventria narrowly avoided the damage that Zhang intended, a sentence within the applicable guidelines range is needed to underscore the seriousness of his offense and to provide just punishment.

The fact that the theft was committed by a trusted member of Ventria's small team only exacerbated the pain felt by the company. Zhang's 2010 letter to TCRI provided a window into his thinking. The letter made clear that Zhang's loyalties were not with the small U.S. company that had given him a job and made him an important part of their team, but with the Chinese rice research institute where he used to work (and to which he hoped to return). It is easy to imagine that there are other small companies throughout the country with trusted employees who

7

themselves are preparing for their next job.  Hopefully, they will not do what Zhang did: steal from their current employer to raise their standing with their future employers.  A sentence within the Guidelines range will discourage others from taking Zhang's path.

The Guidelines enhancements correctly account for the seriousness of this crime.  The PSR applied an enhancement pursuant to U.S.S.G. § 2B1.1(b)(13)(B) because Zhang intended that the seeds and information would be transported outside of the United States for the benefit of TCRI, a Chinese research institute, and his "fatherland," China.  The international nature of this crime increases its seriousness, so this enhancement is reasonable and appropriate.[1]  The PSR also applied an enhancement for abuse of trust under U.S.S.G. § 3B1.3.  Ventria placed immense trust in Zhang, making this enhancement also appropriate.  Zhang was no mere functionary; according to Ventria witnesses, he was one of only a few employees given almost unlimited access to Ventria's proprietary seeds and breeding/growing information.  This access included being one of only six Ventria employees with "keys to the kingdom"—the priceless seed vault.

For the reasons above, a sentence of 151 months is sufficient, but not greater than necessary to comply with the purposes of § 3553(a).

### C.  Ventria Is Entitled to Restitution.

Because this was a crime against property, Ventria is entitled to restitution pursuant to 18 U.S.C. § 3663A, including expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.  18 U.S.C. § 3663A(b)(4).  Ventria reports it incurred $350,000 in legal expenses and lost productivity as a

---

[1] Should the Court conclude that TCRI is not a "foreign instrumentality" and Zhang's loyalty to China is insufficient under U.S.S.G. § 2B1.1(b)(13)(B), the two-level enhancement under U.S.S.G. § 2B1.1(b)(13)(A) remains applicable.

result of this crime, specifying that the figure consisted of approximately $28,073 in legal fees and approximately $321,929 in lost employee productivity.  The Court should order this appropriate restitution as part of Zhang's sentence.

## **CONCLUSION**

For the reasons stated above and in the PSR, the Court should impose a sentence of 151 months of imprisonment, along with an appropriate restitution order.

Respectfully submitted,

STEPHEN R. MCALLISTER
United States Attorney


s/ Scott C. Rask
SCOTT C. RASK, #15643
Assistant United States Attorney
500 State Avenue, Suite 360
Kansas City, Kansas  66101
(913) 551-6730
(913) 551-6541 (fax)
Scott.Rask@usdoj.gov

s/ Matthew R. Walczewski
MATTHEW R. WALCZEWSKI
Trial Attorney
National Security Division
United States Department of Justice
600 E Street NW
Washington, D.C.  20530
(202) 233-0986
(202) 233-2147 (fax)
Matthew.walczewski@usdoj.gov
Ill. Bar No. 6297873

s/ Brian J. Resler
BRIAN J. RESLER
Trial Attorney
Computer Crime and Intellectual
Property Section
United States Department of Justice
1301 New York Avenue N.W.

Sixth Floor
Washington, D.C.  20005
(202) 616-3298
(202) 305-1744 (fax)
Brian.resler2@usdoj.gov
Wis. Bar No. 1023837

CERTIFICATE OF SERVICE

I certify that on March 23, 2018, I electronically filed this Sentencing Memorandum with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Thomas W. Bartee
Assistant Federal Public Defender
500 State Avenue, Suite 201
Kansas City, Kansas  66101
(913) 551-6712
(913) 551-6562 (fax)
Tom_bartee@fd.org
Attorney for defendant

David M. Magariel
Assistant Federal Public Defender
500 State Avenue, Suite 201
Kansas City, Kansas  66101
(913) 551-6712
(913) 551-6562 (fax)
David_magariel@fd.org
Attorney for defendant

 s/ Scott C. Rask
SCOTT C. RASK, #15643
Assistant United States Attorney