**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| v. ) | Case No. 13-20134-01 (Criminal) |
|  ) | 19-2185 (Civil) |
| WEIQIANG ZHANG, ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This case is before the court on petitioner Weiqiang Zhang's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 300). Petitioner raises three grounds for relief—all based on his claim that he received ineffective assistance of counsel: (1) counsel failed to adequately investigate and prepare for trial; (2) counsel developed excessive knowledge of the subject matter instead of focusing on the evidence; and (3) because counsel failed to understand the issues, petitioner could not make an informed decision about how to proceed. For the reasons set forth below, the court denies petitioner's motion.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Petitioner was a rice breeder for Ventria Bioscience. Although Ventria prohibited employees from taking rice seeds away from its facility, petitioner did take some, and they were later found in his home. These transgenic rice seeds contained the recombinant proteins that Ventria developed. The government also found transgenic rice seeds in the luggage of a Chinese delegation from the Tianjin Crop Research Institute in China, who had recently been at petitioner's home.

On September 8, 2016, the government filed a Superseding Indictment, charging petitioner with conspiring to steal trade secrets belonging to his employer (Ventria), trade secret theft, interstate transportation of stolen property, and conspiracy to commit that offense. (Doc. 117.) Later, the government moved to dismiss the substantive count for stealing trade secrets. A jury convicted petitioner of the remaining charges on February 16, 2017. (Doc. 232.) The court sentenced petitioner to 121 months in prison, and later imposed restitution. Less than a year after the judgment became final, petitioner filed an original § 2255 petition. Petitioner later amended the petition, which is what is now before the court.

## II. LEGAL STANDARD

28 U.S.C. § 2255 allows "a prisoner in custody . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence imposed was in excess of the maximum authorized by law, or is otherwise subject to collateral attack [to] move the court . . . to vacate, set aside or correct the sentence." To prevail on a § 2255 motion, petitioner must show a "fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974). The court must give petitioner an evidentiary hearing on the motion to determine issues and make findings of fact "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). But an evidentiary hearing is not necessary where petitioner's allegations are conclusory in nature rather than statements of fact. *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994).

All three of petitioner's arguments allege that his counsel was ineffective. The court applies the standard identified in *Strickland v. Washington*, 466 U.S. 668 (1984), when determining whether a habeas petitioner's counsel provided ineffective assistance. *See Romano v. Gibson*, 278 F.3d 1145,

1151 (10th Cir. 2002) (applying *Strickland*). Under *Strickland*, a petitioner bears the burden of satisfying a two-pronged test in order to prevail.

First, he must show that his attorney's "performance was deficient" and "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. The court affords considerable deference to an attorney's strategic decisions and "recognize[s] that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

Second, a habeas petitioner must demonstrate prejudice, which requires a showing that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The court's decision may rest on either the performance prong or the prejudice prong, or both. *Id.* at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the [petitioner] makes an insufficient showing on one. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.").

### III.    ANALYSIS

#### A. Counsel's Alleged Failure to Adequately Investigate and Prepare for Trial

First, petitioner disagrees with defense counsel's strategy. Counsel tried the case on a theory that the transgenic rice seeds were not "trade secrets" (or at least that defendant and his co-conspirators did not believe they were trade secrets), and that Ventria Bioscience did not create a workplace culture in which employees understood what was considered a trade secret. Petitioner, however, claims that counsel should have concentrated his efforts instead on addressing whether the seeds in the luggage

were 100% identical with the seeds at petitioner's house. Petitioner claims counsel should have produced an independent test of the seeds and an expert witness on the subject, and his failure to do so was professional incompetence. In petitioner's reply brief, he also suggests that counsel should have had handwriting analysis completed on the labels of the bags of transgenic rice.

Petitioner is incorrect that the government needed to show that the two sets of seeds were identical. The government presented evidence that both sets of seeds contained Ventria's proprietary lactoferrin and human serum albumin proteins. Defense counsel moved to exclude this testimony before trial, cross-examined the experts, and moved to strike their testimony. Defense counsel used these tactics to suggest that the government had not shown that the seeds found in the luggage were Ventria's seeds from petitioner's house.

Along with this evidence, the government had other evidence raising a reasonable inference from which the jury could decide that petitioner gave the Chinese delegation the seeds. And the government had to prove other elements that defense counsel attacked, as well—i.e., that petitioner conspired to steal information he believed contained trade secrets. Defense counsel has wide latitude in choosing trial strategy, and the court determines that he acted within the scope of reasonable professional judgment.

To prevail on a claim of failure to secure expert testimony, petitioner must show how calling expert witnesses would have bolstered his defense, refraining from pure speculation. *Boyle v. McKune*, 544 F.3d 1132, 1138 (10th Cir. 2008) (stating that the defendant failed to show that medical experts could have reached a conclusion regarding consent contrary to the conclusions reached by the nurses and supplied no evidence or convincing argument that medical testimony could support his claim); *see also Waterhouse v. Hatch*, 498 F. App'x 811, 813 (10th Cir. 2012) (holding that counsel's failure to secure expert testimony was not prejudicial because the potential value of the expert

testimony was speculative) (citing *Boyle*, 533 F.3d at 1138–39); *United States v. Smith*, 421 F. App'x 889, 900 (10th Cir. 2011) (indicating that whether modified testimony would have increased chances of acquittal was speculative and insufficient to show prejudice) (citing *Boyle*, 544 F.3d at 1140).

The choice of which witnesses to call is one for counsel—a "classic tactical decision." *United States v. Chapman*, 593 F.3d 365, 369 (4th Cir. 2010) (citing *Boyle*, 544 F.3d at 1139); *see also Durbin v. Province*, 448 F. App'x 785, 789 (10th Cir. 2011) (holding that counsel's decision not to call certain witnesses was not unreasonable and did not prejudice defendant); *Tolbert v. Ulibarri*, 325 F. App'x 662, 665 (10th Cir. 2009) (finding it was "within the wide range of permissible trial strategy to focus on the weaknesses in the state's evidence rather than call an additional expert witness"). Often, the speculative witness is a "two-edged sword." *Boyle*, 544 F.3d at 1138**–**39. Speculation goes both ways: one can speculate about favorable testimony as well as unfavorable testimony. *Id*. ("'[I]t is at least as reasonable, and maybe more so, to speculate that the testimony of those witnesses would have damaged defendant's case.'") (quoting *United States v. Snyder*, 787 F.2d 1429, 1432 (10th Cir. 1986)).

Petitioner's claim that the end result of the proceedings would have been different had his counsel retained an expert witness is speculative. True, an expert witness may have helped his case if he testified the seeds were not 100% identical. But it is just as likely that an expert witness could have hurt his case. The same logic applies to petitioner's argument that counsel should have completed and presented handwriting analysis. Counsel's decision not to retain an expert witness is a tactical decision—one that is virtually unchallengeable.

Petitioner also fails the second prong of the *Strickland* test because he fails to show a reasonable probability that different trial strategy or conducting tests and calling experts would have resulted in a different outcome. Petitioner is not entitled to relief on his first claim.

### B. Counsel Focused on the Wrong Subject

Petitioner's second argument relates to the first. Petitioner claims that counsel ignored the real issue in the case: whether the rice seeds were identical. Instead, counsel "amassed a wealth of knowledge about the scientific process of bioengineered transgenic rice, how such rice is created, and how the processes used in manufacturing the seeds are patented." (Doc. 300, at 6.) According to petitioner, all of this knowledge was "completely irrelevant to the charges and theory of guilt." (*Id.*) Petitioner also claims that counsel "turned himself into his own expert." (*Id.* at 16.)

Again, petitioner fails to satisfy either *Strickland* prong. For the reasons previously stated, counsel did not provide ineffective assistance because he failed to challenge whether the seeds were 100% identical. Counsel did, in fact, challenge whether the seeds were the same. And to the extent that petitioner is suggesting counsel should have called an expert to testify, such decisions are within the realm of trial strategy. If the scientific process was, in fact, irrelevant (as petitioner claims), then failing to call an expert would be acceptable strategy. Further, the court can only speculate as to what the expert would say and how or if the testimony would alter the outcome. *See Waterhouse v. Hatch*, 498 F. App'x 811, 813 (10th Cir. 2012) (holding that the petitioner did not show prejudice because the value of expert testimony was speculative). Petitioner is unable to show prejudice.

### C. Petitioner's Alleged Inability to Make an Informed Decision

For his last challenge (also related to the first two), petitioner claims that he was unable to make an informed decision about whether to plead guilty. Petitioner claims that counsel did not understand the issues. If counsel had investigated whether the rice seeds in the luggage were the same as those in petitioner's house, then petitioner could have made an informed decision on how to proceed. Instead, because counsel pursued what petitioner considers irrelevant issues, petitioner was denied effective assistance of counsel.

The flaw with petitioner's argument is that he also states that he "was adamant from the beginning that he did not give any seeds to the [Chinese delegation]—and [] still maintains this position today." (Doc. 300, at 8.) This being the case, the court cannot find prejudice from counsel's failure to pursue petitioner's theory. It is unclear how petitioner could have pleaded guilty if he was unwilling to admit that he gave seeds to the Chinese delegation. *See Lafler v. Cooper*, 566 U.S. 156, 162–64 (2012).

Once again, petitioner has shown neither deficient performance nor prejudice. He did not receive constitutionally deficient representation before, during, or after trial.

## III. CONCLUSION

The record before the court conclusively shows that petitioner is not entitled to relief. Accordingly, no evidentiary hearing is required. *See United States v. Marr*, 856 F.2d 1471, 1472 (10th Cir. 1988) (holding that no hearing is required where factual matters raised by a § 2255 petition may be resolved on the record).

The court must consider whether to issue a certificate of appealability. The court will issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Under this standard, a petitioner must show that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted). The court is not convinced that its conclusions are debatable among reasonable jurists or that the issues presented merit further proceedings. For the reasons stated above, the court finds that petitioner has not made a substantial showing of the denial of a constitutional right. The court declines to issue a certificate of appealability in accordance with Rule 11 as amended December 1, 2009.

**IT IS THEREFORE ORDERED** that petitioner Weiqiang Zhang's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 300) is denied.

**IT IS FURTHER ORDERED** that the court will not issue a certificate of appealability.

Dated this 13th day of February, 2020, at Kansas City, Kansas.

                                              **s/ Carlos Murguia**
                                              **CARLOS MURGUIA**
                                              **United States District Judge**